ALPHA INDUSTRIES, Inc., a corporation, Plaintiff and Respondent, v. The MONTANA LIQUOR CONTROL BOARD, and ED RAFN, ASHTON JONES, JOHN McLAUGHLIN, WALTER MORRIS and ROBERT ARNOT, Constituting the members of said Board, Defendants and Appellants.

JOVENE COMPANY, a corporation, Plaintiff and Respondent, v. The MONTANA LIQUOR CONTROL BOARD, a body politic of the STATE OF MONTANA, ED RAFN, ASHTON JONES, JOHN McLAUGHLIN, WALTER MORRIS and ROBERT ARNOT, individually and as members of The MONTANA LIQUOR CONTROL BOARD, Defendants and Appellants.

Nos. 10865, 10866.
Submitted May 11, 1965. Decided June 23, 1965.
403 P.2d 606.

H. J. Luxan (argued), Helena, for appellants.

John W. Bonner, Arthur P. Acher (argued), Wellington D. Rankin, Helena, for respondent Alpha Industries, Inc.

Lamey, Crowley, Kilbourne, Haughey & Hanson, Billings, Henry I. Grant, Jr. (argued), Columbus, Myles J. Thomas, Jr. (argued), Billings, for respondent Jovene Co.

MR. JUSTICE CASTLES delivered the Opinion of the Court.

These concurrent appeals by the Montana Liquor Control Board and its members, hereinafter referred to as the Board, are the result of declaratory judgments adverse to the contentions of the Board. The judgment in favor of the respondent, Alpha Industries, Inc., was rendered by the District Court of Lewis and Clark County. The judgment in favor of the respondent, Jovene Company, was rendered by the District Court of Stillwater County. These judgments and the conclusions of law upon which they are based, differ in some respects and are irreconcilable in some respects as will appear later. However, since these cases present common questions of law and are somewhat similar on their facts they can be disposed of with a single opinion.

Alpha Industries, Inc., a plaintiff below, plans to engage in business with a plant in Helena, Montana. It has under lease and has entered into a contract to purchase a certain structure and premises and is presently making arrangements for the acquisition of the equipment and machinery required for carrying on the proposed business. Alpha proposes to import in bulk certain distilled spirits of a proof authorized while stored in bulk but in excess of that authorized under the laws of the United States for beverage purposes. It intends to manufacture, from these imported materials, whiskey 86 proof, and gin and vodka suitable for beverage purposes. These beverages are hopefully to be sold and delivered to the Board, defendant below, and in other states to those lawfully authorized to purchase them.

Alpha, being required to secure a basic permit under the Federal Alcohol Administration Act before it can begin to manufacture said beverages, has taken preliminary steps to secure said permit. An agent of the United States Treasury Department investigated Alpha's premises and indicated they can be made suitable for the use and purposes proposed. However, in addition to the requirement that the premises be suitable for the proposed use, a further prerequisite is that Alpha represent to the Treasury Department that the operations proposed to be conducted are not in violation of the laws of the State of Montana. In order to comply with this prerequisite Alpha made application to the Board for an appropriate permit or license which could be presented to the Treasury Department as evidencing the fact that the business it proposes to engage in is not in conflict with the laws of Montana. The Board declined to issue such license or permit.

In refusing to issue a license to Alpha the Board contends that R.C.M.1947, §§ 4-101, 4-112(i), and 4-233, forbid the proposed business. It further contends that even if the business could be licensed under the laws of Montana, Alpha would be required to purchase materials needed for its manufacturing processes through the Board, paying the 4 percent license and 16 percent excise taxes specified in sections 4-240 and 4-417, R.C.M.1947, and that the manufactured products would again be subject to these taxes when sold to the Board.

The District Court of Lewis and Clark County determined: that the provisions of section 4-112(i), R.C.M.1947, hereinafter set out, applied only to the defendant Board, and did not apply to the plaintiff, Alpha Industries, Inc.; that the plaintiff is subject to the regulations of the Treasury Department in the purchase of materials for manufacture and is subject to the control of the Board in the sale and delivery of its finished products; and that the license and excise taxes are due and collectible only upon liquor purchased by the Board at the time of the sale and delivery thereof by the Board.

In the companion case the proposed operations of Jovene Company are substantially the same as Alpha's. The Jovene operation in Stillwater County differs in that it proposes to manufacture pre-mixed alcoholic beverages under its own formula which has been approved by the Federal Food and Drug Administration. Jovene's hoped for sales would be through the Board to the consuming public in Montana, and also hopefully to purchasers in other states. The conclusions of the District Court of Stillwater County differ significantly from the conclusions of the district court in the Alpha case. The district court in the Jovene case determined: that the Jovene Company is entitled to a special permit from the Board enabling Jovene to manufacture and sell its product; that all liquor used by Jovene in its manufacturing process must be purchased through the Board; that Jovene is obligated to pay the 4 percent license tax when it purchases liquor from the Board to be used in its manufacturing process, but is not required to pay this tax when it sells its finished product; and that Jovene is obligated to pay the 16 percent excise tax when its product is sold by the Board to consumers through its stores in Montana, but is not obligated to pay this tax when purchasing liquor from the Board for its manufacturing process.

Thus, under the holding of the Lewis and Clark County District Court, as regards Alpha, neither the 4 percent license tax nor the 16 percent excise tax is collectible until the product is sold to the ultimate consumer, whereas under the holding of the District Court in Stillwater County the 4 percent license tax is collected at the time of purchase from the Board (thus all of what we will call the alcoholic ingredients are taxed even though sold interstate) while the 16 percent excise tax is collectible only at the time of sale to the consuming public in Montana.

It is from these judgments that the Board has appealed. The specifications of error have raised two general issues to which the remainder of this opinion will be devoted. The first is

whether the proposed businesses of the respondents are prohibited by the laws of Montana.

It is the contention of the Board that the processing of liquor as proposed by the respondents is unlawful under the provisions of sections 4-101, 4-112(i) and 4-233, supra, and that sections 4-140 and 4-150, R.C.M.1947, do not authorize the manufacture of liquor in Montana, but go no further than to authorize the "having or keeping liquor" by a federally licensed manufacturer of liquor. These sections provide:

"4-101. *Citation of state liquor control act—declaration of policy—subject matters of regulation under act.* * * * It is hereby declared to be the policy of the state of Montana to effectuate and insure the entire control of the manufacture, sale and distribution of liquor within the state of Montana * * * in, and subject to, the authority of the state of Montana through the Montana liquor control board, in accordance with the provisions of the state liquor control act of Montana * * * and in accordance with the provisions of the retail liquor license act * * *."

"4-112. *Functions, powers and duties of board.* The board shall have the following functions, duties and powers: * * *

"(i)   To determine the nature, form and capacity of all packages to be used for containing liquor kept or sold under this act; provided that all spirituous and vinous liquors shall be purchased and sold only in bottled containers in the original packages, and not in barrels or bulk, it being the intent and purpose of this act to prevent the rectification or dilution of such liquors * * *."

"4-233. *Intent and construction of act.* The purpose and intent of this act are to prohibit transactions in liquor which take place wholly within the state of Montana except under state control as specifically provided by this act, and every section and provision of this act shall be construed accordingly. The provisions of this act dealing with the importation, sale and disposition of liquor within the state through the instru-

mentality of a board and otherwise provide the means by which such state control shall be made effective, and nothing in this act shall be construed as forbidding, affecting or regulating any transaction which is not subject to the legislative authority of the state."

"4-140. *Application of act.* (1) Nothing in this act shall prevent any brewer, distiller, or other person duly licensed, under the provisions of any statute of the United States of America, for the manufacture of liquor, from having or keeping liquor in a place and in the manner authorized by or under any such statute.

"(2) Nothing in this act shall prevent—

"(a) The sale of liquor by any person to the board;

"(b) The purchase, importation and sale of liquor by the board for the purposes of and in accordance with this act."

"4-150. *Sale of liquor unlawful, when—foreign substance in liquor forbidden—possession of liquor, when unlawful. * * ***

"(3) No person shall have or keep any liquor within the state which has not been purchased from a state vendor of the Montana liquor control board or from a druggist authorized to sell the same * * *. This subsection shall not apply to the board or to the keeping or having of liquor by brewers, distillers and other persons duly licensed by the United States for the manufacture of such liquor * * *."

This cause was argued and submitted for decision to this court on January 14, 1965. Subsequent thereto the Thirty-ninth Legislature enacted House Bill 295 (Chapter 154, Session Laws 1965) and House Bill 451 (Chapter 67, Session Laws 1965). Since this legislation is pertinent to the issues presented by this appeal this court ordered the cause to be briefed and argued a second time. It was again submitted to this court on May 11, 1965.

House Bill 451 amends section 4-140, supra, by the addition of the following paragraphs:

"It is hereby declared to be the policy of the State of Mon-

tana that the manufacture of liquor including the distillation, rectification, bottling and processing as these terms are defined under the provisions of the laws of the United States shall be authorized and permitted by any brewer, distiller, rectifier or other person duly licensed under any provision of any statute of the United States of America in a place and in the manner authorized by or under any statute of the United States provided the Montana state liquor control board may make such regulations as the board deem necessary with respect thereto, not inconsistent with this act, or with the statutes of the United States of America or regulations issued under the provisions of the Federal Alcohol Administration Act, Title 27, United States Code, sections 201 through 212 inclusive, or regulations issued under the provisions of the Internal Revenue Code, Title 26, United States Code, sections 5001 through sections 5693, inclusive * * *.

"Section 2. All acts and parts of acts in conflict herewith are hereby repealed.

"Section 3. This act shall be in effect on passage and approval."

It is clear with the passage of House Bill 451 that the intent of the Thirty-ninth Legislative Assembly was to declare the proposed businesses of the respondents to be lawful, if not already so, under the laws of this state. Now it is clearly permissible to conduct such a business in Montana provided such business is also authorized by the statutes of the United States of America. House Bill 451 also indicates that the manufacture of liquor in Montana is to be regulated chiefly by the federal government. The Montana Liquor Control Board can make regulations in regard to manufacture only to the extent they are not inconsistent with the federal statutes and regulations. This amendment destroys the argument of appellants that the liquor laws of Montana only permit the "having and keeping" of liquor. Its manufacture is now specifically authorized.

House Bill 451 further indicates that materials to be

used in the manufacture of liquor in this state are not required to be purchased through the Board. They may be purchased in any manner not inconsistent with the laws and regulations of the federal government. The provisions of section 4-112(i), which require that all liquor "be purchased and sold in bottled containers in the original packages, and not in barrels or bulk," apply only to the Board, and do not apply to the respondents.

Having found the proposed business operations of the respondents to be lawful, our next inquiry is whether the Board has the power to issue to Alpha and Jovene the appropriate permit or license which they in turn may present to the Treasury Department to show that their proposed enterprises are not in violation of the laws of this state. House Bill 295, abolished individual liquor permits in Montana. However, in examining the State Liquor Control Act (see sections 4-101, 4-107, 4-112 and 4-113, R.C.M.1947) we find the legislature has granted to the Board a certain degree of regulatory power which it may exercise in regard to the liquor industry. Under this grant of power the Board may supervise, regulate and control the processing of liquor in Montana to the extent such supervision, regulation or control is not inconsistent with the Liquor Control Act itself or the federal statutes and regulations. Thus, the Board, in exercising its supervisory power, may require that a permit or license be obtained prior to engaging in the manufacture of liquor as such a requirement would not be inconsistent with the Liquor Control Act or federal law.

The Board therefore has the power to issue such a permit. We have already found that the respondents are entitled to it. Therefore, the Board should issue a permit to each of the respondents.

The Board, Alpha and Jovene, however further question any such permit as to what fee may be charged by the Board. The Board, assuming it has authority to issue permits as we have held herein, contends that under its broad powers conferred by the Legislature that it should be able to establish

a fee. It suggested on oral argument that the fee established by R.C.M.1947, § 4-317.1 for Beer manufacture in the amount of $400.00 establishes a reasonable fee in legislative policy for such a permit as we are here discussing. While we make no specific holding as to a fixed amount, we do believe and indicate that a similar fee for permits to Alpha and Jovene are not so unreasonable as to violate the general broad administrative powers of the Board.

The remaining issue before this court is whether the license tax and excise tax imposed by sections 4-240 and 4-417, R.C.M.1947, are payable with respect to materials purchased by the respondents for processing purposes, and whether they are payable with respect to the respondents' finished products sold and delivered by the Board through state liquor stores. As previously indicated the district courts came to inconsistent results in regard to the license tax. Section 4-240 provides:

"The Montana liquor control board is hereby authorized and directed to charge, receive and collect at the time of sale and delivery of any liquor under any provisions of the laws of the state of Montana a license tax of four per centum (4%) of the retail selling price on all liquor so sold and delivered. Said tax shall be charged and collected on all liquor brought into the state and taxed by the Montana liquor control board. The retail selling price shall be computed by adding to the cost of said liquor the state markup as designated by said board. Said four per centum (4%) license tax shall be figured in the same manner as the state excise tax and shall be in addition to said state excise tax. The Montana liquor control board shall retain the amount of such four per centum (4%) license tax so received in a separate account and shall apportion said license tax to the treasurers of the counties according to the amount of liquor sold by said board to the purchasers in each county. The Montana liquor control board shall pay quarterly to each county treasurer the proportion of the license tax due each county.

"The county treasurer of each county shall retain one-fourth (¼) of said license tax, and shall, * * * apportion the remaining three-fourths (¾) thereof to the treasurers of the incorporated cities and towns within his county * * *."

Section 4-417 provides:

"The Montana liquor control board is hereby authorized and directed to charge, receive and collect at the time of the sale and delivery of any liquor as authorized under any provision of the laws of the state of Montana an excise tax at the rate of sixteen per centum (16%) of the retail selling price on all liquor so sold and delivered. * * *"

The Board argued that the incidence of what is termed the license and excise tax is upon both the importation or purchase of liquor for processing purposes and upon sale to consumers of the finished product. Alpha contended that the incidence of the license and excise tax is only upon the sale of the finished product. Jovene's position was that the incidence of the license tax was upon importation or purchase of liquor for manufacturing and that the incidence of the excise tax was upon purchase by the Board for sale to the consumer. It is the decision of this court that the license and excise taxes are due and collectible only upon liquor purchased by the Montana Liquor Control Board at the time of sale and delivery of the same to the Board. These taxes are not due and collectible upon materials, products and distilled spirits containing alcohol purchased by respondents for manufacturing purposes. Both taxes are computed on the basis of retail selling price which is the cost of the liquor to the Board plus the state markup. It is obvious that the license tax, the excise tax and the state markup are all to a certain degree revenue producing measures. (It is not important to this decision to determine to what extent the markup and taxes are regulatory measures, enacted as an exercise of the police power, or revenue measures, imposed under the power of taxation.) It is important to determine the purpose of the legislature in enacting sections

4-240 and 4-417, supra. Surely, it was not in the minds of the legislators to burden the liquor industry in this state with a double tax and perhaps destroy that industry. Rather their purpose must have been, in addition to regulating the liquor industry, to obtain revenue for the state by reasonable tax provisions.

The statutes themselves indicate where the incidence of the tax shall lie. As already mentioned these taxes are computed as a percentage of retail selling price. This price is determined at the time of sale to the consuming public. Thus, the apparent legislative intent is that the incidence of these taxes rests upon the consumer finally.

Section 4-240 also provides that the revenue obtained from the license tax be apportioned among the counties and cities of the state on the basis of gross sales. This further indicates a consumer tax, as the amount of revenue each city or county receives, is determined by the amount of liquor sold by the Board to the consumers of the city or county.

We therefore reach the following conclusions. Sections 4-240 and 4-417, supra, disclose an intent to tax the sale of liquor at retail through state owned stores to consumers within the State of Montana. These statutes impose no other tax. The function of the State Liquor Act, in this connection, is to govern the sale of liquor at retail. It leaves, in the main, the supervision of the manufacture of liquor to the federal statutes and regulations issued thereunder.

The judgment of the District Court of Lewis and Clark County is affirmed. The judgment of the District Court of Stillwater County is also affirmed but modified to the extent it is inconsistent with this opinion.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICES JOHN C. HARRISON, DOYLE and ADAIR concur.